UTAH PLUMBING AND HEATING CONTRACTORS ASSOCIATION and its members, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 6617.

United States Court of Appeals Tenth Circuit.

Aug. 24, 1961.

---

6. "The Supreme Court in the American System of Government," p. 70.

7. Brown v. Maryland, 1827, 12 Wheat. 419, 6 L.Ed. 678.

Louis H. Callister, Salt Lake City, Utah (Callister & Fullmer, Salt Lake City, Utah, were with him on the brief), for petitioner.

Rosanna A. Blake, Washington, D. C. (Stuart Rothman, Dominick L. Manoli, Marcel Mallet-Prevost and Nancy M. Sherman, Washington, D. C., were with her on the brief), for respondent.

Before MURRAH, Chief Judge, and BRATTON and BREITENSTEIN, Circuit Judges.

BRATTON, Circuit Judge.

Utah Plumbing and Heating Contractors Association, with its principal office located in Salt Lake City, Utah, is a multi-employer bargaining association comprised of various members engaged in the plumbing and pipe fitting industry; and it represents its members in collective bargaining with labor organizations. Four local unions at Salt Lake City of the United Association of Journeymen and Apprentices of the Pipe Fitting Industry are labor organizations.

The unions filed with the National Labor Relations Board a charge of unfair labor practice on the part of the association and its interested members. The Board issued its complaint; the association and its members responded; and a trial examiner made findings of fact. This was the substance of the findings. A two-year contract between the unions and their employers who were members of the association was to expire March 31, 1959. In January, the unions advised their employers of their desire to open negotiations for a new contract. Pursuant to such advice, several meetings of the parties were held during which proposals and counter-proposals were made for the terms of a new contract. The respective business representatives composed the negotiating team for the unions; and the association acted for its members. A wage increase was the principal if not the sole issue. The association rejected the initial proposal of the unions and submitted a counter-proposal which was rejected by the membership of the unions. By such vote of rejection, the unions were authorized upon appropriate notice to their member-

ship to call a strike provided a better offer was not received; and that was customary procedure within the unions. On March 30, a meeting of the association and its interested employer members was held, at which the association was given authority to make a final offer not to exceed a stipulated amount, and to institute a lockout of employees if such offer was rejected. On the following day—the date of expiration of the two-year contract—spokesmen for the association and its interested members and the representatives of the unions held a conference at which the association submitted the new proposal and insisted that the negotiators for the unions give some assurance of its acceptance or at least assure the association that they would try to "sell it to their people." A spokesman for the association advised the representatives of the unions that unless they could assure the association that they would try to sell the offer to their people, the employers would have to cease work the next morning. Representatives of the association said in words of their own choice that the interested employers had as much right to lock out the employees as the employees had to strike. And they threatened a lockout unless the negotiators for the unions would give assurance that they would urge the membership of their respective locals to accept the wage proposal of the employers. The requested assurance was not given. But the unions proposed to continue working under the old contract until the new proposal could be submitted to a vote of the membership of the unions; and the association was informed that such vote could and would be taken after the membership had been served with appropriate notice, a matter of a few days. The interested employers who were members of the association were not faced with a strike or strike threat. The association called on its interested members and other interested employers to lock out their employees; and effective the following day, April 1, many though not all complied. Despite the lockout, the unions submitted the proposal to their members.

Three of the unions voted to accept it. One voted against its acceptance, but the vote of the majority of the unions was binding on all. On April 4, the bargaining principals executed a new contract and the lockout was terminated.

The Board adopted the findings made by the examiner. And the Board entered an order in which it required the association and its interested members to desist and refrain from threatening their employees with a shutdown, lockout, or layoff in order to force such employees and their bargaining representatives to give up their bargaining demands and accept the proposals of the association and its members without further bargaining; to cease and desist from interfering with, restraining, or coercing their employees in any like or related manner in their right of self-organization; to bargain collectively; to make whole employees discriminated against in the lockout, shutdown, or curtailment of operations which had occurred; and to post notices. The association and its interested members brought the proceeding here on petition to review the order.

■ The order of the Board is not challenged for lack of evidence to sustain the findings of fact. It is challenged on the single ground that an employer may use the economic weapon of a lockout at the termination of a contract with a union as a corollary of a strike which may be used by the union at any time its members see fit. It is conceded that the threat of the lockout and the lockout itself were intended to exert economic force on the employees and the unions to accept the contract which had been offered them, but it is argued that the use of such weapon did not constitute an unfair labor practice. The Labor Management Relations Act, 61 Stat. 136, 29 U.S.C.A. § 141 et seq., as amended, does not contain a provision expressly forbidding a lockout when used as an economic weapon in defense to a strike or threat of strike by employees who are members of a union, and therefore it cannot be said that every lockout constitutes an unfair labor practice per se. National La-

bor Relations Board v. Truck Drivers Local Union, 353 U.S. 87, 77 S.Ct. 643, 1 L.Ed.2d 676. But section 7 of the Act, 29 U.S.C.A. § 157 creates the right of collective bargaining; and section 8, 29 U.S.C.A. § 158 makes wrongful interference with the exercise of that right an unfair labor practice.

■■ Considered as a whole, the Act and its legislative history make it clear that "there are circumstances in which employers may lawfully resort to the lockout as an economic weapon." National Labor Relations Board v. Truck Drivers Local Union, supra [353 U.S. 87, 77 S.Ct. 646]. But in this instance the parties had been negotiating in conventional manner for a new contract. The negotiations had not been terminated. Proposals and counter-proposals had been submitted and rejected. While the vote of the members of the unions rejecting the last offer made to them authorized the calling of a strike in the event no better offer should be received, no strike was called and there is no showing in the record that anything was said at the conference table which amounted to a threat of a strike. And no critical operational problem or hazard of economic loss immediately confronted the association or the employers as the unions offered to continue working under the terms of the old contract until the members of the unions could vote on the last offer submitted. Under these circumstances, the threat at the bargaining table to resort to a lockout unless the representatives of the unions would give assurance of their endeavor to bring about acceptance of the last offer and the prompt effectuating of the lockout constituted wrongful interference with the right of collective bargaining under section 7 of the Act and therefore an unfair labor practice under section 8. Quaker State Oil Refining Corp. v. National Labor Relations Board, 3 Cir., 270 F.2d 40, certiorari denied, 361 U.S. 917, 80 S.Ct. 261, 4 L.Ed.2d 185.

The order of the Board will be enforced.